IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| DAVID A. UNGER,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social<br>Security,<br><br>　　　　　Defendant. | CV 13-80-BLG-CSO<br><br>ORDER ADDRESSING<br>SUMMARY JUDGMENT<br>MOTIONS |

Plaintiff David A. Unger ("Unger") initiated this action to obtain judicial review of Defendant Commissioner of Social Security's ("Commissioner") decision denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383(c). *Cmplt. (ECF 4)*. On August 20, 2013, upon the parties' consent, this case was assigned to the undersigned for all purposes. *Notice of Assignment (ECF 14)*.

Now pending are: (1) Unger's "Opposed Motion for Summary Judgment, Motion for Declaratory Judgment and Motion for

Remand[,]" *ECF 18*; and (2) the Commissioner's motion for summary judgment, *ECF 20*. For the reasons stated below, the Court will remand this matter for an award of benefits.

I.  **PROCEDURAL BACKGROUND**

Unger filed his SSI application on February 8, 2010. *AR 310-18*.[1] He filed his DIB application on June 9, 2011. *AR 72-78*. In both applications, Unger alleged that he became unable to work on February 25, 2006. *AR 72, 310*. He maintained that he has been unable to work because of neck pain, back pain, and limitations stemming from being born with a right clubfoot. *AR 329-30*.

The Social Security Administration ("SSA") denied Unger's applications initially and on reconsideration. *AR 38-44, 319-23*. On October 2, 2012, an Administrative Law Judge ("ALJ") held a hearing. *AR 324-80*. On October 22, 2012, the ALJ issued a written decision denying Unger's claims. *AR 14-23*. On May 7, 2013, after the Appeals Council denied Unger's request for review, the ALJ's decision became final for purposes of judicial review. *AR 5-8*; 20 C.F.R. §§ 404.981,

---

[1]"AR" refers to the administrative record on file with the Court.

416.1481 (2013). This Court has jurisdiction under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court's review is limited. The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. § 405(g). "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Id.* (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted). The ALJ is responsible for determining credibility, resolving conflicts in

medical testimony, and resolving ambiguities. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III. BURDEN OF PROOF

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180

F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1. The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2. If not so engaged, the claimant must next show that he or she has a severe impairment. *Id*.

3. The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id*. If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4. If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id*. "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id*. at 1098-99.

5. If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that

there is other work in significant numbers in the national economy that the claimant can perform. *Id.* The Commissioner can meet this burden via the testimony of a vocational expert or reference to the Medical-Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2. *Id.* If the Commissioner is unable to meet this burden then the claimant is disabled and entitled to benefits. *Id.*

## IV. THE ALJ'S OPINION

The ALJ followed the five-step sequential evaluation process in considering Unger's claims. First, the ALJ found that Unger had not engaged in substantial gainful activity since his alleged onset date of February 25, 2006. *AR 16*.

Second, the ALJ found that Unger has the following severe impairments: "degenerative disc disease of the cervical and lumbar spine, status-post right clubfoot, and ankle degenerative changes." *AR 16-17*.

Third, the ALJ found that Unger does not have an impairment or a combination of impairments that meets or medically equals any one of the impairments in the Listing of Impairments. *AR 17-18*.

Fourth, the ALJ found that Unger has the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds. He can frequently balance, climb stairs, kneel, crouch, and crawl. He can occasionally stoop and climb ladders. He has no visual, communicative, or manipulative limitations. He must avoid concentrated exposure to extreme cold and hazards such as moving machinery and unprotected heights. Work must be simple and routine due to effects of pain medication.

*AR 18*.

The ALJ also found that Unger is unable to perform his past relevant work as a janitor. *AR 21*. He found that Unger's past job required him to engage in both exertional and non-exertional activities that exceed Unger's RFC. *Id*.

Fifth, the ALJ found that Unger could perform jobs that exist in significant numbers in the national economy in light of his age (30 years old at the time of his alleged onset date, which the regulations define as a younger individual), education (at least high school), work experience, and RFC. *AR 21-22*. Consequently, the ALJ found that Unger was not disabled. *AR 22-23*.

## V. PARTIES' ARGUMENTS

Unger maintains that evidence in the current record, if appropriately credited, demonstrates that he is disabled under the Act. *ECF 18 at 3-4.* He argues that the evaluation by his treating physician, Dr. Janet Armstrong, M.D., and the SSA-ordered evaluation by physician's assistant Penny M. Denning ("PA Denning"), establish that he is disabled. *Id.* (citing *AR 301-09*).

Unger next argues that the ALJ erred in three ways when he afforded PA Denning's opinion no weight. First, Unger maintains, the ALJ erred in giving PA Denning's opinion no weight on the basis that she is not an acceptable medical source under the regulations. *Id. at 3-4.* He argues that the regulations actually allow consideration of a physician assistant's opinion to determine the severity of a claimant's impairments and how the severity affects a claimant's ability to work. *Id. at 4.*

Second, Unger argues that the SSA required him to be evaluated by a medical source of its choosing, and it chose PA Denning. Requiring him to be evaluated by a source that the SSA chose, then

determined is unacceptable, and then rejected because she is unacceptable, Unger argues, "renders the proceeding substantially unfair." *Id. at 6*. Relatedly, Unger argues that this basis for rejecting PA Denning's opinion was erroneous also because Dr. Bruce Swarny, a medical doctor, signed off on PA Denning's evaluation, a fact which the ALJ apparently overlooked. Thus, Unger argues, the report actually was from an acceptable medical source and should have been credited. *Id. at 5*.

Third, and in the alternative to reversing the Commissioner's decision, Unger argues that the Court should remand the matter. He notes that the SSA required him to be evaluated by PA Denning on the basis that the SSA "need[ed] more specific medical information about [Unger's] condition and how [he] function[s]." *Id. at 8* (referring to *ECF 18-1*). After the ALJ rejected PA Denning's opinion, Unger argues, such specific medical information and information about how he functions was no longer in the record. This lack of a fully-developed record, he argues, is error. *Id*. Thus, Unger argues, if the Court does not accept the opinions of Dr. Armstrong and PA Denning, it should

remand the matter to the Commissioner for further development of the record. *Id. at 8-11*.

In response, the Commissioner argues that the ALJ's decision that Unger was not disabled is supported by substantial evidence and is free of harmful legal error. *Commissioner's Br. (ECF 21) at 2*. Specifically, the Commissioner argues that: (1) the ALJ's determination that Unger could perform a range of sedentary work is supported by the record as a whole, *id. at 3*; (2) although the ALJ erred in stating that PA Denning's evaluation was not completed by an "acceptable medical source" in light of Dr. Swarny's signature on it, the error was harmless because the ALJ gave "other appropriate reasons for rejecting the conclusory and unsupported opinion[,]" *id. at 4*; (3) the ALJ properly rejected the PA Denning/Dr. Swarny evaluation because they: (a) saw Unger only once; (b) did not provide a function-by-function assessment of his work-related limitations; (c) improperly based their opinion largely on Unger's subjective complaints; (d) improperly rendered the opinion that Unger was disabled on an issue that is reserved solely to the Commissioner; and (e) rendered an opinion entirely inconsistent

with treatment notes and recommendations from Drs. Alan Dacre and Thomas Mirich, III, orthopaedic specialists who treated Unger, *id. at 4-7*; (4) it is irrelevant to the ultimate issue whether the SSA ordered and arranged a consultative examination for Unger in connection with his disability application because an ALJ is entitled to reject any opinion that is inconsistent with the record as a whole, *id. at 7*; (5) the ALJ was not required to order another consultative examination because the record already was fully developed, *id. at 8-9*; (6) the ALJ properly rejected Dr. Armstrong's opinion and gave appropriate reasons for doing so, *id. at 9-11*; and (7) remand is not appropriate, *id. at 12-13*.

In reply, Unger argues that: (1) the letter from SSA requiring him to undergo a consultative examination to provide SSA with more specific information regarding his condition and how he functions is evidence to be considered on this appeal, *Unger's Reply Br. (ECF 23) at 2*; (2) the SSA believed Unger's medical records were lacking as of July 6, 2011, when it required Unger to appear for an evaluation and the SSA "was in control of choosing the medical provider and determining the number and scope of the evaluation(s)[,]" *id.*; (3) the SSA could have

ensured that its chosen medical provider met its qualifications, was available to evaluate Unger on a number of occasions, and had treatment notes of Drs. Dacre and Mirich for use in the evaluation, *id. at 2-3*; (4) the SSA did none of those things, which is not Unger's fault, and requiring the later-rejected consultative evaluation "was a complete waste of time and expense for both [the Commissioner] and [Unger,]" *id. at 3*; (5) it was "substantially unfair" for the SSA "to require the completion of a medical report that [the SSA] in the end declares has no bearing on the outcome[,]" *id.*; and (6) remand is appropriate under the circumstances, *id. at 4-5*.

## VI. DISCUSSION

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error. The Court is not permitted to re-weigh the evidence.

For the reasons set forth below, and applying controlling Ninth Circuit authority, the Court finds that the Commissioner's decision is not based on substantial evidence in the record, and contains legal error.

As noted, Unger's primary argument is that the ALJ erred in failing to give more weight to the opinion of his treating physician, Dr. Armstrong, and to the opinions of SSA-selected PA Denning and Dr. Swarny stemming from PA Denning's evaluation of Unger. The Commissioner acknowledges that the ALJ erred in his conclusion that PA Denning's opinion, supported by Dr. Swarny, should be rejected because Denning was not an "acceptable medical source." *ECF 21 at 4.* It is also somewhat disingenuous for the ALJ to reject her opinion because she only saw him once – when she was a PA hired by the SSA to examine him once. More importantly, however, the Court concludes that the ALJ erred in rejecting Dr. Armstrong's opinion, for the reasons set forth below.

"[T]o reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). Here, the ALJ noted that the record contained two letters and an RFC assessment by Dr. Armstrong that indicated that Unger "was limited to less than sedentary work,

and was unable to work due to his orthopedic impairments." *AR 20-21*.

But the ALJ discounted Dr. Armstrong's opinion because it was "not supported by the very limited treatment notes provided by Dr. Armstrong." *AR 21*. The ALJ also noted that "her medical source statement seems extreme and exaggerated when compared to [Unger's] own reported level of functioning." *Id*. He noted, by way of example, that Dr. Armstrong reported that Unger could not walk even one block, could never stoop, balance, climb, kneel, crouch, or crawl, and could only sit, stand, or walk for one hour each per day. On the other hand, the ALJ noted, the record contained evidence that Unger "shopped in public, prepared simple meals, could perform most household chores at a slower pace, performed computer maintenance for others, and could lift 30 pounds." *Id*. Thus, the ALJ concluded, "Dr. Armstrong's opinion seems exaggerated." *Id*.

Finally, the ALJ observed that Dr. Armstrong is a general practitioner. Her opinion, he noted, was not shared by Drs. Dacre or Mirich, both of whom are orthopaedic specialists. *Id*.

As discussed below, the Court concludes that the ALJ's proffered

-14-

reasons for discounting Dr. Armstrong's opinion are not specific or legitimate nor are they supported by substantial evidence in the record. *See Molina*, 674 F.3d 1111. Thus, the ALJ erred.

First, respecting the ALJ's position that Dr. Armstrong's opinion was inadequately supported by treatment notes, the Court disagrees. The record reflects that Dr. Armstrong has been treating Unger for more than 10 years. *AR 164-67* (indicating Dr. Armstrong's referral of Unger to physicians at arthritis and osteoporosis center in 2001). Medical records from the Glasgow Clinic, where Dr. Armstrong practices, indicate as early as 2004 that he had a neck injury with "radicular symptoms[ ]" for which he was prescribed pain medications. *AR 173-74*. Dr. Armstrong noted in February 2007 – that is, within a year of Unger's alleged onset date – that, on examination, he exhibited "moderate distress at rest, extreme distress with any kind of movement." *AR 170*. She also observed, inter alia, "[s]evere torticollis, [and] possible underlying disk disease[ ]" and ordered prescription pain medications. *Id*. She noted finally that he needed to follow up "to be triaged to neurosurgery." *Id*. The record also contains records

indicating that Unger was referred in April 2007 to Dr. Dacre, who ordered an MRI that indicated "[e]xtensive degenerative changes" at C4-5, C5-6, and C6-7. *AR 193*. In light of this evidence, the Court concludes that the ALJ's rejection of Dr. Armstrong's opinion for lack of record support is error.

Second, respecting the ALJ's position that Dr. Armstrong's opinion seems "extreme and exaggerated when compared to [Unger's] own reported level of functioning[,]" the Court is not persuaded. Unger specifically testified at his hearing that he was not able to easily stand, walk, move about, and lift and carry objects. He said he could stand and walk only for short periods. He testified that it is difficult for him to lift and carry even a gallon of milk and that such exertion can "freeze [him] up for several days[ ]" where he is "pretty much bedridden[ ]" and cannot "even lift [his] head off the pillow ... [or] turn over by [himself]." *AR 348-49*. In addition, he said he could not perform his former job as a janitor and had attempted "to do PC repair, self-employed ... [but] just could not maintain that physically, either." *AR 331*. Unger's testimony, which reflects "his own reported level of functioning[,]" is

not inconsistent with Dr. Armstrong's medical source statement. Thus, the ALJ's rejection of Dr. Armstrong's opinion on the basis that it was inconsistent with Unger's own reported level of functioning was error.

Third, the Court concludes that the ALJ's observation that Dr. Armstrong's opinion, rendered in her capacity as a general practitioner, was not shared by orthopaedic specialists Drs. Dacre and Mirich, also is not persuasive. There is no evidence in the record that Drs. Dacre or Mirich ever opined respecting Unger's specific functional limitations. Thus, to conclude that Dr. Armstrong's opinion regarding Unger's functional limitations was not shared by Drs. Dacre and Mirich, neither of whom opined on that issue, is unsupported by the evidence. The ALJ erred.

Finally, the Court concludes that the ALJ erred in affording Dr. Armstrong's opinion little weight for an additional reason. As the record reflects, Dr. Armstrong wrote letters discussing Unger's condition, treatment, limitations, and credibility dated December 7, 2011 and August 30, 2012. *AR 301 and 309.* She also completed a "Medical Source Statement of Ability to Do Work-Related Activities

(Physical)" dated December 7, 2011.  *AR 302-308*.  In those records, Dr. Armstrong's use of factual detail and her force of tone indicate her status as Unger's treating physician "employed to cure and [who] has a greater opportunity to know and observe the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (explaining rationale for giving greater weight to a treating physician's opinion).  In light of those documents and other records reflecting Unger's medical treatment over the years, it would be unreasonable to assume, based solely on the reasons that the ALJ provided in affording her opinion little weight, that Dr. Armstrong's opinion was "extreme and exaggerated."  As she noted in her 2012 letter:  Unger endures severe pain and his condition has worsened over time; he is unable to sleep well despite using pain pills; his pain is not well-controlled even when using NSAIDs and narcotics; increased activity by Unger leads to more pain; although he has been seen by a spine surgeon, an orthopedic surgeon, a rheumatologist, and physical therapists, continued therapy is cost prohibitive without insurance or a job; Unger does not abuse medication; he is sincere; and Unger's condition "will never improve."

*AR 309.*

For the foregoing reasons, the Court concludes that the record does not support the ALJ's rejection of Dr. Armstrong's opinion. Thus, the ALJ erred. Fully crediting Dr. Armstrong's opinion, the record is adequate to support Unger's allegations of physical disability. As such, the Court sees no reason to address Unger's other allegations of error.

Because the Court reverses the Commissioner's decision denying benefits, the Court next must decide whether to remand for an award of benefits. In *Moisa v. Barnhart*, 367 F.3d 882, 886-87 (9th Cir. 2004), the Ninth Circuit determined that remand for payment of benefits was appropriate because, *inter alia*, no outstanding issues remained to be resolved before a determination of disability could be made. The same is true here. If Dr. Armstrong's opinion is properly credited, it compels the conclusion that Unger is disabled under the Act, and is entitled to benefits. Remand for further proceedings would add nothing.

## VII. CONCLUSION

Based on the foregoing, **IT IS ORDERED** that the Commissioner's decision denying DIB and SSI is REVERSED, Unger's

"Opposed Motion for Summary Judgment, Motion for Declaratory Judgment and Motion for Remand" *(ECF 18)* is GRANTED to the extent it seeks reversal of the ALJ's decision and an award of benefits, and the Commissioner's motion for summary judgment (*ECF 20*) is DENIED.

The Clerk of Court shall enter Judgment accordingly.

DATED this 6th day of March, 2014.

/s/ Carolyn S. Ostby
United States Magistrate Judge